(No. 15782.—Judgment reversed and decision set aside.)

THE INDIAHOMA REFINING COMPANY, Plaintiff in Error, *vs.* THE INDUSTRIAL COMMISSION *et al.*—(JOHN BYNUM, Defendant in Error.)

*Opinion filed February 19, 1924.*

WORKMEN'S COMPENSATION—*when evidence does not establish the relation of employer and employee.* Where a refining company contracts with a certain person to unload coal at the company's plant, a man hired by such person to help him and who is paid by him is not an employee of the company but of the independent contractor, where the proof is that the company had no authority or supervision over such employee but dealt solely with the independent contractor; and there is no authority for an award against the company, as employer, for an injury to such employee while unloading coal.

WRIT OF ERROR to the Circuit Court of St. Clair county; the Hon. GEORGE A. CROW, Judge, presiding.

JOHN A. BLOOMINGSTON, for plaintiff in error.

W. J. MACDONALD, (JOHN W. FREELS, and T. S. MORGAN, of counsel,) for defendant in error.

Mr. JUSTICE THOMPSON delivered the opinion of the court:

Defendant in error, John Bynum, an unmarried man, suffered a broken leg by jumping from a railroad car from which he was unloading coal at the plant of the Indiahoma Refining Company. An award was made against said company, and this writ of error is prosecuted to review the

judgment of the circuit court of St. Clair county confirming that award.

Bynum testified that he was fifty-three years old; that he was employed to shovel coal from the cars to the bin of plaintiff in error; that he had worked about three weeks; that he was hired by Walter King; that King paid him so much for each car he unloaded; that he worked when King had work for him to do; that King paid him at the end of his day's work; that he averaged five dollars a day and worked from three to five days a week; that King was his boss, gave him all his instructions and had the right to discharge him; that he had no conversation whatever with the officers of the refining company and that he received no instructions from them; that he did not know what arrangements King had with the company but that all his arrangements were with King; that on the day he was injured John Fry was working in the car with him; that they were working side by side, both shoveling coal in the same direction; that the floor of the car was defective where he was shoveling, and that he moved over toward Fry's side of the car in order to shovel better until he passed the bad place in the floor; that Fry became angry and told him to stay on his side of the car; that he tried to explain to Fry that he was working around the bad place in the floor, and that Fry told him he did not want any back talk; that Fry seized a pick that was in the car and started after him; that he ran to the end of the car, jumped out and broke his leg when he alighted on the ground; that he was carried into the office of the refining company and later was taken to his home; that King went to his home with him; that he explained to King how he had hurt himself.

John Fry testified that he was working with Bynum on December 14, 1921; that they were shoveling coal from a car into the bin of the refining company; that Bynum kept getting in his way, and he told him to cut less so that he could stay out of his way; that Bynum threw down his

shovel and said, "Well, I will get out of the car;" that he said to Bynum, "Well, get out;" that Bynum passed by him, going toward the end of the car; that he looked around and saw Bynum pull his knife from his pocket and open it; that when he saw this he picked up the pick and Bynum jumped out of the car; that he paid no attention to him after that.

Walter King testified that he had a contract with the Indiahoma Refining Company to unload its coal; that he was paid fifteen cents a ton for unloading the coal; that he had a similar contract with other companies; that he hired extra help when he needed it; that there were days when he would have little or no coal to unload and other days when he would have several cars ready for him; that he hired his men and discharged them without consulting the refining company; that he had full authority over them and directed them what to do; that no one else had anything whatever to do with the men that worked for him; that he paid the men so much for each car that was unloaded; that Bynum earned about $10 or $15 a week during the three weeks he worked for him; that he paid his men after they finished unloading the cars that were assigned to them; that he went to the office of the company and received pay for unloading the coal and that he paid his men from the money he received from the company.

The superintendent of the company testified that he hired King to unload the company's coal at a certain rate a ton; that King had had the contract for several years; that at first he paid him eighteen cents a ton but later the price was reduced to fifteen cents; that sometimes there would be a car a day, sometimes there would be no car for three or four days, and sometimes there would be several cars in a day; that when coal arrived and the company was ready to have it unloaded King was called; that he did not know any of the men employed by King; that he did not know how much King paid his men; that the

refining company paid them nothing and had no authority whatever over the men working for King; that he did not employ King's men nor discharge them nor direct them in any way; that he told King where to put the coal; that King put it where he was told and then came to the office and collected the money due him; that he did not know what King did with the money after it was given to him; that the company carried no insurance on King's employees; that after Bynum was injured some woman called him by telephone and told him that Bynum was in need of medical attention; that he notified the insurance company that he had received this request.

The only questions argued are whether Bynum was an employee of the Indiahoma Refining Company and whether the accident was one arising out of his employment. Inasmuch as there is no evidence in the record which establishes the relation of employer and employee between plaintiff in error and Bynum it will not be necessary to consider the second question. A mere statement of the facts as they appear in this record demonstrates that the award must be set aside. King was an independent contractor and Bynum was one of his employees. This conclusion is in harmony with our decision in *Hale* v. *Johnson,* 80 Ill. 185, *Meredosia Levee District* v. *Industrial Com.* 285 id. 68, *Bristol & Gale Co.* v. *Industrial Com.* 292 id. 16, and *LaMay* v. *Industrial Com.* 292 id. 76. The facts considered, there is nothing in *Decatur Railway Co.* v. *Industrial Board,* 276 Ill. 472, *Cinofsky* v. *Industrial Com.* 290 id. 521, or *Franklin Coal Co.* v. *Industrial Com.* 296 id. 329, which supports the award in this case.

The judgment is reversed and the award is set aside.

*Judgment reversed and decision set aside.*