HENRY HALPIN, Plaintiff in Error, *vs.* THE INDUSTRIAL COMMISSION *et al.*—(MARJANER PERRY, Defendant in Error.)        *Opinion filed December 16, 1925.*

1. WORKMEN'S COMPENSATION—*purpose of section 31 of Compensation act of 1923.* The chief purpose of section 31 of the Compensation act of 1923 is to protect employees of sub-contractors in case the latter are not financially responsible, as this section makes the principal employer liable the same as if he had directly hired the employees of the sub-contractor in the particular work done for him; but the further provision that the section shall not apply in any case unless the accident occurs on, in or about the premises where the work is being done, indicates an intention to limit the principal employer's liability to work done under his more immediate supervision and control.

2. SAME—*when section 31 of Compensation act does not apply.* The provision of section 31 of the Compensation act that the principal contractor shall not be liable where the accident occurs elsewhere than "on, in or about the immediate premises on which the principal has contracted that the work shall be done" is not ambiguous, and the principal contractor is not liable under said section where the accident occurred while the sub-contractor's employee was on his way from the sub-contractor's place of residence to the place where the work was being done for the principal contractor.

WRIT OF ERROR to the Circuit Court of Cook county; the Hon. HARRY M. FISHER, Judge, presiding.

WILLIAM GREENE, and H. L. HOWARD, for plaintiff in error.

AUGUSTINE J. BOWE, and WILLIAM J. BOWE, for defendant in error.

Mr. JUSTICE FARMER delivered the opinion of the court:

During January, 1924, Marjaner Perry, widow of William M. Perry and administratrix of his estate, filed an application for adjustment of claim with the Industrial Commission of Illinois, seeking to obtain compensation from plaintiff in error, Henry Halpin, for injuries received by her husband near Momence, in Kankakee county, on November 2, 1923, and which resulted in his death. The application was heard at Kankakee before an arbitrator in April, 1924, and an award made to the widow of $12 per week for 312½ weeks, or a total of $3750. A credit of $2000 previously paid to the administratrix by a third party, who it appears was the immediate cause of the injury, was allowed by the arbitrator, who based his award under section 31 of the Workmen's Compensation act. Upon review before the Industrial Commission the award was set aside and the cause dismissed for the reason that the injury did not occur on, in or about the immediate premises where the employer had contracted the work should be done. The cause was then removed by writ of *certiorari* to the circuit court of Cook county, where in April, 1925, an order was entered reversing the decision of the Industrial Commission and allowing an award to the widow of $1750, counsel for the parties having stipulated that the sum of $2000 had been received by the widow, and if any award was made that sum should be deducted from the total. The circuit court's order stated that liability for the award was in accordance with the provisions of section 31 of the Workmen's Compensation act, the deceased being an employee of a sub-contractor of plaintiff in error, which sub-contractor had not insured or guaranteed her liability to pay compensation under the act. From the judgment of the circuit court Halpin has sued out this writ of error.

The facts developed on the hearing are substantially as follows: Henry Halpin, the plaintiff in error, is a general contractor and has resided for a number of years in the vicinity of Momence, Illinois. During November, 1923, when the accident here in question occurred, he was erecting two buildings in Momence and had various materials for construction work hauled to the respective premises. The sand used for the buildings was purchased from the owner of a sand-pit located about two miles south of Momence and hauled from the pit to the building premises at Halpin's expense. Mrs. Florence VanKirk owned, and with the assistance of her son, Henry, operated, a farm of 130 acres located about half a mile north of Momence. William Perry, the deceased, was employed by Mrs. Van-Kirk to do all kinds of work in connection with her farm. Halpin had previously done some cement work on the Van-Kirk farm for which he had not been paid, and upon Henry VanKirk making application for work to Halpin, an arrangement was made whereby VanKirk was to use his mother's team and wagon for hauling building materials to the two buildings being constructed by Halpin, who was to pay the regular wage for teamsters of seven dollars per day, and the amount earned was to be credited on Mrs. VanKirk's indebtedness to Halpin. Under this arrangement the son drove the team and hauled building materials for about ten days. Halpin would call up the VanKirk house each morning by telephone and give Mrs. VanKirk directions as to what materials were to be hauled and to what location. On the day of the accident Halpin telephoned Mrs. VanKirk as usual and gave instructions that he wanted her son to haul sand on that day. The son having something else to do for a day or two, the deceased was instructed by Mrs. VanKirk to take her team and wagon and haul sand on the Halpin jobs. It appears that deceased hauled some building material on the day before the accident occurred, and plaintiff in error admitted having seen

deceased about three o'clock P. M. of that day on a dump-wagon, unloading building material at one of the properties where the construction work was being done. He had no conversation with deceased about the work, did not know he was doing any hauling of material on the day of the accident and did not see him on that day. It appears from the testimony of the two VanKirks that the teamster, with the wagon and team, was supposed to go to work at seven o'clock in the morning, and the team was to be taken back to the VanKirk farm at noon for feed and water. The deceased on November 2, 1923, the day of the accident, came back to the farm during the noon hour, had his dinner and fed the team. The VanKirk farm is located on the hard road known as the Dixie highway, which is used for travel to and from Momence. No one saw or knew when deceased left the VanKirk farm after dinner and the record contains no testimony of any witness who saw the accident. Etta Klassen testified she was driving on the Dixie highway past the VanKirk farm about twenty minutes to one and saw some persons lifting Perry, the deceased, up from the pavement and place him in an automobile which was standing there. Witness said Perry was unconscious, that the wagon tongue was broken, but that she saw no damage to the automobile, which was standing still, headed south. She thought the wagon was empty. Mrs. VanKirk testified she saw the horses running in the field, and that was the first knowledge she had that an accident had happened.

The contention of plaintiff in error is, first, that he is not liable under the provisions of section 31 of the Workmen's Compensation act; and second, that there is no competent evidence showing that Perry's death resulted from an accident which arose out of and in the course of his employment.

Section 31 of the Workmen's Compensation act of 1923 is as follows: "Anyone engaging in any business or en-

terprise referred to in sub-sections 1 and 2 of section 3 of this act who undertakes to do any work enumerated therein, shall be liable to pay compensation to his own immediate employees in accordance with the provisions of this act, and in addition thereto if he directly or indirectly engages any contractor whether principal or sub-contractor to do any such work, he shall be liable to pay compensation to the employees of any such contractor or sub-contractor unless such contractor or sub-contractor shall have insured, in any company or association authorized under the laws of this State to insure the liability to pay compensation under this act, or guaranteed his liability to pay such compensation.

"In the event any such person shall pay compensation under this section he may recover the amount thereof from the contractor or sub-contractor, if any, and in the event the contractor shall pay compensation under this section he may recover the amount thereof from the sub-contractor, if any.

"'This section shall not apply in any case where the accident occurs elsewhere than on, in or about the immediate premises on which the principal has contracted that the work shall be done."

Under the undisputed facts in this case the alleged accident occurred on the Dixie highway in the immediate vicinity of the VanKirk farm, which is at least a half mile north of the town of Momence, where plaintiff in error was engaged in his building operations, and at least two and one-half miles north of the sand-pit from which the sand for construction work was being hauled, and counsel for plaintiff in error contend that such accident did not occur "on, in or about the immediate premises on which the principal has contracted that the work shall be done," and that he is not liable. Counsel for defendant in error contend that the word "premises" should be interpreted as working area, and that such area extended from the sand-pit, two and one-half miles south of Momence, to the VanKirk

farm, where the team was fed and cared for; and that the word "principal," used in the last paragraph of said section, refers to the sub-contractor.

From our examination of the provisions of section 31 and section 3 of the Workmen's Compensation act, it appears that under the 1913 act section 31 imposed a liability upon all persons engaging in any of the businesses or enterprises named in section 3 of the act as it then existed, while under the act as it existed in 1923 section 31 only covers such businesses as are named in sub-sections 1 and 2 of section 3, namely, the erection, maintaining, removing, remodeling, altering or demolishing of any structure, and construction, excavating or electrical work. (*Johnson Co. v. Industrial Com.* 306 Ill. 197.) The chief purpose of this provision in the act is to protect employees of sub-contractors in case the latter are not financially responsible, and the act makes the principal employer liable the same as if he had directly hired the employees for the work which such principal employer is carrying on. However, it would seem from the amendments to the sections mentioned that the thought and purpose of the law-making body were to lessen the contractor's obligations to employees of sub-contractors and make the principal contractor liable only for work done under his more immediate supervision and control. In the instant case the employee was not within a half-mile of where plaintiff in error's building operations were being carried on and was not engaged in hauling sand from the pit to the building premises when the accident occurred. If the deceased was on his way to work after having had his dinner and fed the team, as counsel for defendant in error claim, though no such proof appears in the record, surely plaintiff in error should not be held responsible for the safe passage of an employee over a road not in any way connected with or used in the work of the principal employer and over which highway he has no control whatever. The statute is not ambiguous. In plain language it

says it shall not apply where the accident occurs elsewhere than "on, in or about the immediate premises on which the principal has contracted that the work shall be done." "Principal," as used in the statute, means the principal contractor and not a sub-contractor, and "immediate premises" does not mean an area of two and a half miles over which workmen travel over public highways in going to and from the place where the work of the principal contractor is being done. This construction is sustained by the courts of States having statutes containing provisions similar in principle to our statute. *Williams* v. *Buchanan,* (Tenn.) 261 S. W. 660; *White* v. *Fuller Co.* (Mass.) 114 N. E. 829; *Bello* v. *Notkins,* (Conn.) 124 Atl. 831; *Shickley* v. *Philadelphia and Reading Coal and Iron Co.* (Pa.) 118 Atl. 255; *Murphy* v. *Ludlum Steel Co.* 169 N. Y. Sup. 781.

This conclusion renders unnecessary a discussion of the contention that the evidence does not show the accident arose out of and in the course of deceased's employment.

The claim was tried under and liability was based upon section 31 before the arbitrator, Industrial Commission and circuit court, and the award was made by the arbitrator and circuit court under that section. Counsel for defendant in error now say in their brief in this court that they are impressed with an entirely new light: that plaintiff in error was the employer of Perry and was directly liable as such, and that liability under section 31 is an alternative contention. While we have held a person who secures a judgment in his favor may in a court of review urge in its support any ground which makes it a valid and legal judgment, that is not the precise question here raised. The claim was prosecuted under the liability imposed by section 31, and the arbitrator and circuit court held plaintiff in error liable and based an award upon that section. At no time was it suggested that plaintiff in error was the employer of Perry and directly liable as such. The question now raised was never raised at any stage until the case reached this court,

has never been passed upon by the lower court, and was not presented to or argued in that court by counsel on either side. It would seem unfair to plaintiff in error to affirm the award, under the circumstances, on the ground now urged. But even if defendant in error has the right to raise the question for the first time in this court it cannot avail, for under the undisputed facts plaintiff in error was not directly liable as the employer of Perry.

The judgment of the circuit court is reversed and the award set aside.     *Judgment reversed and award set aside.*