(No. 21683.—

Viola Thompson *et al.* Defendants in Error, *vs.* The Industrial Commission *et al.*—(The Fred M. Crane Company, Plaintiff in Error.)

*Opinion filed February 23, 1933.*

Burt A. Crowe, and William J. Fenlon, for plaintiff in error.

JOSEPH A. LONDRIGAN, CHARLES S. ANDRUS, and COVEY & WOODS, for defendants in error.

Mr. JUSTICE DUNCAN delivered the opinion of the court:

An application for adjustment of claim for compensation against plaintiff in error, the Fred M. Crane Company, and C. W. Barham, was filed with the Industrial Commission by defendants in error, the widow and five minor children of Lewis A. Thompson, deceased, on account of an accidental injury to the deceased on September 11, 1929, which resulted in his death on that day. After a hearing the arbitrator made an award in favor of defendants in error, against plaintiff in error and Barham, for $14 a week for 280 weeks and $11.20 for one week. The case was reviewed by the Industrial Commission on the petition of the plaintiff in error, only, which found that the accidental injury did not arise out of and in the course of the deceased's employment and set aside the award of the arbitrator in its entirety. The record was taken before the circuit court of Logan county by writ of *certiorari*, and that court set aside the decision of the commission and ordered that plaintiff in error and Barham pay to defendants in error the award of the arbitrator. This court has allowed a writ of error to plaintiff in error for a further review of the record.

There is no dispute about the facts, and they are as follows: Plaintiff in error had contracted with the Lower Salt Creek Drainage District, in Logan county, to do work in that district which consisted of widening an existing ditch in places and cutting a new ditch in other places. On March 26, 1929, plaintiff in error wrote a letter to Barham asking him to submit a bid for clearing the right of way for the proposed work by cutting and disposing of weeds, brush and trees thereon. On April 3, 1929, Barham wrote to plaintiff in error offering to do the work of clearing the right of way for $48.50 per acre and to provide all tools

and labor required for such work. On June 1, 1929, plaintiff in error wrote to Barham accepting his bid of $48.50 per acre for the clearing work and setting out as terms of the contract that Barham was to furnish all labor, teams and tools and bear the expense in doing the work. On the 16th and last day of each month Barham was to furnish plaintiff in error's superintendent a pay-roll sheet showing the time of Barham and each man employed in the work during the preceding half month. On the 5th and 20th of each month plaintiff in error would give Barham checks covering labor and $25 for Barham for the preceding half month, and as soon as the clearing work was completed and accepted by the engineer of the drainage district plaintiff in error would pay Barham $48.50 per acre for the work, less amounts already paid to him. Other conditions of the contract need not be stated. Barham accepted the contract on the terms stated by plaintiff in error and began the work of clearing the right of way. The deceased and his son, Ernest Thompson, were employed in this work. Shortly before the date of the accident Barham was doing clearing work on the Beaver place. He was instructed by the engineer for the drainage district to move to the Stroup place. On the afternoon before the accident that resulted in the death of the deceased, Barham instructed the deceased to take home with him that evening the tools used in doing the clearing work and three water casks which were owned by Barham. He further told the deceased to report for work the next morning at the Stroup place with the tools and the water casks filled with water, and also told the deceased what route to follow to get to the Stroup place. The next morning, September 11, 1929, the deceased and his son put the tools and water casks into an automobile owned by the deceased and started for the Stroup place over the route designated by Barham. At a place at least a half mile from the right of way of the drainage district the road on which the deceased and his

son were traveling crossed railroad tracks. While crossing the railroad tracks the automobile was struck by a train. The deceased was killed and his son injured. The men working for Barham were paid twice a month by checks of plaintiff in error.

Barham testified: A day or two before he started to work, Mr. Crane, of plaintiff in error, told him that plaintiff in error would carry his employees on the company pay-roll but that he would have to "pay the insurance." He paid insurance to plaintiff in error on a certain percentage of his pay-roll, which "was $3.43 on the hundred." "Lewis Thompson and Ernest Thompson worked for me on this work. I had known them both for some time. They did chopping."

Ernest Thompson testified: "Last year, in September, I worked for Mr. Barham cutting timber. My father worked there too."

Elmer Hobbs, the superintendent in charge of the work being done for the drainage district by plaintiff in error, in referring to the work of clearing the right of way testified: "Mr. Barham was in charge of the work being done. I did not have any supervision over his work. He submitted his pay-roll records to me twice a month and in turn I handed him a check for the amount of his pay-roll." Witness was at the scene of the accident a few minutes afterward and knew about it. He knew that one of the men employed by Barham had been killed and another had been injured. He learned that they were working for Barham. He didn't know them at the time. Each man working for Barham received a check from the Crane Company for his pay. "That's all I had to do with his work and as supervisor and superintendent I delivered the checks twice a month. I knew that Ernest Thompson and his father were on the pay-roll."

At the hearing before the arbitrator it was stipulated that the questions in dispute were, "whether on the 11th

day of September, 1929, the relation of employer and employee existed, whether the accident arose out of and in the course of the employment, and whether notice of the accident was given within the time provided by the statute."

We think it is clear under the facts of this case that Barham was not an employee of plaintiff in error but was an independent contractor. (*Besse* v. *Industrial Com.* 336 Ill. 283.) Neither party to this case in this court contends otherwise. The first question to determine, therefore, is whether the deceased, at the time of the accidental injury that resulted in his death, was an employee of plaintiff in error or of Barham. In section 4 of the Workmen's Compensation act the word "employer" is defined to include every person, firm, public or private corporation, "who has any person in service or under any contract for hire, express or implied, oral or written;" and in section 5 the term "employee" is defined to mean "every person in the service of another under any contract of hire, express or implied, oral or written." We have held that these definitions should be broadly construed, (*Field & Co.* v. *Industrial Com.* 285 Ill. 333,) but we cannot hold that the relation of employer and employee exists between two persons unless one is in the service of the other or under a contract of hire, express or implied, to him. Barham testified that the deceased and his son were working for him (Barham). Ernest Thompson testified that he worked for Barham, and that his father "worked there too." According to the testimony of the superintendent of plaintiff in error both the deceased and his son were employees of Barham. It is true that the deceased's wages were paid to him by checks of plaintiff in error, but it is also clear under the evidence that any amount so paid was charged by plaintiff in error to Barham on his contract. The fact that his wages were paid to the deceased by checks of plaintiff in error does not show that he was an employee of plaintiff in error rather than of Barham. (*Allen-Garcia Co.* v. *Indus-*

*trial Com.* 334 Ill. 390; *Indian Hill Club* v. *Industrial Com.* 309 id. 271.) The deceased's services were rendered to Barham, under whose directions and orders the work was done. Plaintiff in error had no control or supervision over the manner or way in which the deceased's services should be performed. There is no proof that he was in the service of or under contract of hire to plaintiff in error, and there is therefore no basis for a holding that plaintiff in error is liable to pay compensation for the death of the deceased on the ground that the relationship of employer and employee existed between them at the time of the fatal accident. (*Indiahoma Refining Co.* v. *Industrial Com.* 311 Ill. 153.) Defendants in error mention the fact that Barham, according to his testimony, paid plaintiff in error for insurance on his employees. We presume he meant that he paid for insurance against liability to pay compensation for injuries to his employees. However that may be, that fact has no bearing on any question in this case, because the question of the liability of Barham or the insurance company is not involved by this writ of error.

Section 31 of the Workmen's Compensation act provides: "Anyone engaging in any business or enterprise referred to in sub-sections 1 and 2 of section 3 of this act who undertakes to do any work enumerated therein, shall be liable to pay compensation to his own immediate employees in accordance with the provisions of this act, and in addition thereto if he directly or indirectly engages any contractor whether principal or sub-contractor to do any such work, he shall be liable to pay compensation to the employees of any such contractor or sub-contractor unless such contractor or sub-contractor shall have insured, in any company or association authorized under the laws of this State to insure the liability to pay compensation under this act, or guaranteed his liability to pay such compensation." That section further provides that it "shall not apply in any case where the accident occurs elsewhere than

on, in or about the immediate premises on which the principal has contracted that the work shall be done."

Defendants in error in their brief say that section 31 has no application whatever to this case and do not contend that plaintiff in error is liable in this case by reason of the provisions of that section of the . statute. Since Barham and plaintiff in error were not partners and Barham was an independent contractor and not an employee of plaintiff in error it is difficult to perceive on what theory, other than the application of section 31, an award against both plaintiff in error and Barham could be justified. At any rate, since the accident which resulted in the death of the deceased occurred at least a half mile from the right of way of the drainage district where Barham was to do the work provided for by his contract with plaintiff in error, it is clear that plaintiff in error is not liable to pay compensation for the death of deceased under the provisions of section 31. (*Halpin* v. *Industrial Com.* 319 Ill. 130.) Barham did not seek a review of the award of the arbitrator before the commission and as to him the award became final. While his name appears in this record as a party to the *certiorari* in the circuit court, he was, and is, no longer a party to this proceeding. As to him the award of the arbitrator is final.

Since the deceased was not an employee of plaintiff in error at the time of the fatal accident and plaintiff in error is not liable to pay compensation under the provisions of section 31 of the act it is unnecessary to pass upon the question whether the accident arose out of and in the course of the deceased's employment.

The judgment of the circuit court is reversed as to plaintiff in error.                                             *Judgment reversed.*