Marie Merlo, Administratrix of Estate of Ceasar Merlo, Deceased, and Frances Salvato, Administratrix of Estate of John Salvato, Deceased, Appellees and Cross Appellants, v. Public Service Company of Northern Illinois, Cross Appellee, and Charles M. Porter Company, Appellant and Cross Appellee.

Gen. No. 40,434.

58

Opinion
filed January 19, 1942.

CASSELS, POTTER & BENTLEY, of Chicago, for appellant and cross appellee; RALPH F. POTTER, LESLIE H. VOGEL, HORACE G. MARSHALL and RICHARD H. MERRICK, all of Chicago, of counsel.

BARASA, RINELLA & BARASA, of Chicago, for appellees and cross appellants; JOSEPH BARBERA and BERNARD P. BARASA, JR., both of Chicago, of counsel.

GARDNER, FOOTE, MORROW & MERRICK, of Chicago, for cross appellee; WALTER M. FOWLER, of Chicago, of counsel.

MR. JUSTICE O'CONNOR delivered the opinion of the court.

Plaintiffs, as administratrices of the estates of their deceased husbands, brought an action under the Injuries Act to recover for their wrongful deaths, the two men having been electrocuted April 15, 1936, while at work in the construction of a sewer in the Village of Maywood, Illinois. Defendant, the Public Service Company of Northern Illinois, a corporation, was charged with negligence in the maintenance of a line of wires carrying a high voltage of electricity along Oak street, in Maywood, where the sewer was being constructed; and defendant Charles M. Porter Company, a corporation, was charged with negligence in the operation of a

steel crane used in the construction of the sewer. There was a jury trial and a verdict finding both defendants guilty and assessing plaintiffs' damages, on account of the death of one of the deceased at $4,000 and in the other, $2,500. Afterward judgment was entered in favor of defendant, Public Service Company of Northern Illinois, notwithstanding the verdict, and judgment was entered on the verdict against defendant, Charles M. Porter Company, a corporation.

Charles M. Porter Company prosecutes this appeal and plaintiffs prosecute a cross appeal seeking to reverse the judgment entered in favor of defendant, Public Service Company, notwithstanding the verdict.

The record discloses that some months prior to January, 1936, the Village of Maywood entered into an agreement with the Works Progress Administration for the construction of a sewer in the Village. The work was to be done by the W.P.A. but the Village was to furnish a machine to be used in the construction of the sewer. An oral agreement was entered into between the Village and the Porter Company, whereby the Porter Company was to furnish a machine and a man to operate it to be used in digging a trench and afterward placing the sewer pipe in the trench, for which the Village was to pay $6 a day for the machine and operator. The Porter Company was to make the necessary repairs on the machine and the Village was to furnish gas and oil used in the operation of it. As the work progressed the Porter Company presented its bills, they were paid by the Village and the Porter Company paid the operator.

The machine was of the caterpillar type and moved along as the work progressed. There was a boom to which a bucket or shovel was attached for digging the trench and the machine was operated by Leo Wagner, who had worked for many years for the Porter Company in the operation of this machine. Wagner went to work operating the machine and the W.P.A. men

would tell him where to dig the trench, how wide, how deep, etc., and where to place the dirt. After the trench, about 50 feet in length, was made the bucket or shovel would be removed from the crane and a hook substituted which was to be used in loading the heavy concrete sewer pipes into the trench.

A few days after the work was started it was found the boom was too short and it was lengthened from 40 to 45 feet. This lengthening was done by Wagner, a man from the Porter Company, and some W.P.A. men. As Wagner was operating the machine in the digging of the trench or the placing of the pipes he would be given signals by the W.P.A. foreman, who would swing his arms out or hold them in front. Wagner was the only one who handled the machine.

The trench for the sewer was dug along the north side of Oak street, an east and west street in the Village. The work was begun prior to January 1, 1936, near First avenue and progressed west to near Tenth avenue where the accident occurred April 15, 1936.

The tip of the boom came in contact with wires of the Public Service Company which were carried on poles about 29 feet overhead. The wires carried a high voltage of electricity and at the time of the occurrence, Ceasar Merlo and John Salvato, two workmen employed by the W.P.A., had hold of a metal cable which they were about to use in lowering the tile into the ditch. As a result of the contact between the boom and the wires, the two men were killed.

(1) The Porter Company contends that at the time of the occurrence Leo Wagner was not its employee or agent; that it was not liable for his acts. In this connection its counsel say: "On this appeal, so far as defendant Porter Company is concerned, the sole question presented for determination is whether or not such an agency existed between Wagner and the Porter Company as made it liable for his negligence." And

counsel argue that the court erred in refusing to hold as a matter of law that the operator of the crane [Wagner] was not, at the time of the occurrence, the servant of the defendant Porter Company and in support of this cite *Meyer v. All-Electric Bakery, Inc.,* 271 Ill. App. 522; *Perong v. Eudeikes,* 223 Ill. App. 72; *Allen-Garcia Co. v. Industrial Commission,* 334 Ill. 390; *Thompson v. Industrial Commission,* 351 Ill. 356, and cases from other jurisdictions.

Some of these cases support counsel's contention but we think it unnecessary to discuss the facts and analyze the cases for the reason we are of opinion that viewing the evidence most favorably to the Porter Company, the question whether Wagner was its agent was for the jury. *Densby v. Bartlett,* 318 Ill. 616; *Standard Oil Co. v. Anderson,* 212 U. S. 215; *Connolly v. Peoples Gas Light & Coke Co.,* 260 Ill. 162; *Meredosia Levee District v. Industrial Commission,* 285 Ill. 68; *Case of Emack,* 232 Mass. 596.

The evidence in the *Bartlett* case showed that Bartlett was engaged in selling real estate in Chicago and vicinity. John T. Saracino was in the business of letting automobiles for hire and furnishing drivers. Bartlett contracted with Saracino to have him transport Bartlett's prospective customers, Saracino to furnish the machines and chauffeurs. One of Saracino's automobiles, driven by his chauffeur, was taking plaintiff, Densby, one of Bartlett's customers, to his home when through the negligence of the driver Densby was severely injured. He brought suit for damages against Bartlett and Saracino. A verdict was rendered against both of them but judgment *n.o.v.* was entered in favor of Saracino and against Bartlett on the verdict and he appealed. The Appellate Court affirmed the judgment but on a further appeal the judgment was reversed by the Supreme Court, the court holding that the driver of the automobile in which Densby was

riding was not Bartlett's agent at the time. The court there discussed a number of authorities from Illinois, and other states and quoted with approval the following from *Shephard v. Jacobs*, 204 Mass. 110 (where the owner of an automobile hired it to another with a licensed chauffeur to drive and was sued for damages occasioned by the negligence of the driver, and the owner was held liable): ''In the application of these principles to the hiring of a carriage with horses and a driver, to be used for the conveyance of the hirer from place to place, it has been held almost universally that in the care and management of the horse and vehicle, the driver does not become the servant of the hirer, but remains subject to the control of his general employer, and that therefore the hirer is not liable for his negligence in driving. . . .

''If the defendants had furnished horses, a carriage and a driver under a similar contract, instead of an automobile and a driver, there would be no doubt of their liability for the negligence of the driver in the management of the team. The question is whether the same result should be reached upon the facts of this case. The analogy between the two kinds of contract is very close. The management of an automobile properly can be trusted only to a skilled expert. The law will not permit such a vehicle to be run in the streets except by a licensed chauffeur of approved competency. The danger of great loss of property by the owner, as well as of injury to the chauffeur, his servant, is such as to make it of the highest importance that care should be exercised in his interest, and that the control and management of the machine should not be given up to the hirer. The reasons for applying this rule in a case like the present are fully as strong as when a carriage and horses are let with a driver.'' And continuing, our Supreme Court in the *Bartlett* case said: ''Whether appellant was liable depends upon whether he was the

master and the driver of the car his servant. Perhaps the most universal and unfailing test in determining the relation of master and servant is where the control of the servant includes the power to discharge. Where that is so, the relation of master and servant exists.'' Whether the relationship of master and servant existed might be obscured by circumstances so that no one fact would be decisive. ''Where the servant of the general master is temporarily loaned or hired to another for some special service and becomes for the time wholly subject to the control of the person to whom he is loaned or hired and wholly freed from the control and direction of the general master, he becomes the servant, for the time being, of the person to whom he is loaned or hired and during such time becomes the servant of the latter. . . . The proof does not show Saracino surrendered the manner in which the car should be driven wholly to the control and direction of appellant. . . . Many of the cases above cited expressly hold that the right of the hirer to direct the driver when and where to go, whom to haul and the route to travel does not place the driver under the control of the hirer as to the manner of driving the car. In that regard he is doing the work of the general employer and is not subject to the control of the hirer.''

In the instant case the operator of the machine, Wagner, was skilled in the operation of such a machine. The Porter Company wanted to see that the machine was properly operated. It did not turn the manner of the operation over to anyone and although signals were given to Wagner when to raise and lower the boom, etc., by the W.P.A. men, they were only cooperating with him in the operation of the machine. Moreover, the Porter Company repaired the machine and kept it in order as it agreed to do and the evidence shows the day after the accident when the Public Service Company's operating foreman called at the place where the

sewer was being constructed, he found "They were putting a wooden frame over the end of the boom." It must be assumed this was done for the purpose of preventing the end of the boom from coming in contact with one of the electrically charged wires overhead. We think the question as to the Porter Company's liability was for the jury.

(2) As to the liability of the defendant, the Public Service Company of Northern Illinois.

After the verdict was rendered against the Company it withdrew its motion for a new trial and its motion for judgment *n.o.v.* was sustained. Its counsel in their brief say the only charge of negligence made against it was "that the defendant failed to insulate its wires and permitted the same to become bare and unprotected and in a sagging condition." That the Public Service Company was not required to insulate its wires because it constructed and maintained them in accordance with the rules and regulations laid down by the Illinois Commerce Commission and that the wires in question were not required by the Commission to be insulated. That the rules of the Commission required the wires to be but 20 feet above the ground while the evidence shows that its wires were approximately 29 feet above the ground. We think compliance by the Public Service Company with the requirements laid down by the Commission is not decisive of the question. The question is whether, under all the circumstances disclosed by the evidence, there was any negligence on the part of the Public Service Company that proximately contributed to the accident.

The evidence is to the effect that the wires had been constructed about 30 years before the accident; that they were covered with waterproof material which had become decayed so that in some places it hung down and the wires were nearly bare; that the wires sagged; that there was a strong wind blowing at the time which

might have caused them to move from side to side. The wires "carry 4,000 volts between phases—2300 volts to ground." That Mr. Forsyth who had been employed for 14 years as trouble shooter by the Public Service Company was at the place they were constructing the sewer in January, 1936; he testified "At that time I told the W.P.A. foreman that there was 4,000 volts in the wires he was working under and I said he should keep his boom down so he would clear the wires. I had the foreman stop the crane so I could talk to the crane operator. I told the crane operator and the foreman at the same time about the conditions they were working under. They said they would keep their boom clear of the wires."

In view of all the evidence we think whether the Public Service Company was guilty of negligence was a question for the jury and not for the court. *Austin v. Public Service Co.*, 299 Ill. 112.

The judgment of the circuit court of Cook county as to defendant Charles M. Porter Company, a corporation, is affirmed. The judgment *n.o.v.* in favor of defendant Public Service Company, of Northern Illinois, a corporation, is reversed and the matter remanded to the circuit court with directions to enter judgment on the verdict against that company also.

*Judgment affirmed in part, reversed in part and remanded with directions.*

McSURELY, P. J., and MATCHETT, J., concur.