Lewis T. Greim, Plaintiff-Appellee, v. Sharpe Motor Lines, a Corporation, Defendant-Appellant.

Gen. No. 67–86.

Third Judicial District.

October 23, 1968.

Rehearing denied November 20, 1968.

Coyle, Stengel, Gilman & Keefe, of Rock Island, for appellant.

Reidy, Katz, McAndrews, Durkee & Telleen, of Rock Island, for appellee.

CULBERTSON, J.

Defendant, Sharpe Motor Lines, appeals from a verdict and judgment of $23,000 for the plaintiff, Lewis F. Greim, in his action to recover for personal injuries and property damage already sustained on August 6, 1964, in

a vehicular collision at a Moline street intersection. Complaint is made of rulings on evidence and of jury instructions, and it is also contended that the verdict was excessive.

Due to the nature of the questions raised here, there is no need to set forth the details of the occurrence other than to say, generally, that the collision happened as defendant's southbound truck sought to make a left-hand turn across a lane of traffic occupied by plaintiff's northbound automobile. Plaintiff was hospitalized for sixteen days and treated for various injuries, including one diagnosed as traumatic myositis, or strain, of the muscles of the neck. According to plaintiff's evidence, the effects of the latter injury have persisted and worsened with baleful consequences to plaintiff, both physical and economic. It is the position of defendant that the neck injury was not proximately caused by the occurrence of August, 1964, but by a prior automobile accident of 1957, and it is broadly stated that rulings on evidence by the trial court prevented defendant from presenting this defense to the jury. No contention is made that the verdict of the jury was against the manifest weight of the evidence.

During his direct examination, plaintiff testified that he had been involved in an automobile accident in 1957, wherein he had sustained a whiplash injury to his neck. He stated that there had been no hospitalization other than the taking of x rays; that he had used a traction device at home for a time; and that he had received periodic treatments in the office of Dr. Dasso, an orthopedist. Continuing, plaintiff testified that he had fully recovered from the 1957 injury about one year after his treatment had ceased and that while he had subsequently seen a doctor about other ailments, he had not been treated again for the neck injury in the interval between 1958 and August 6, 1964. On cross-examination, he ad-

mitted that he had started a lawsuit as a result of the 1957 accident, and stated that it had been settled out of court. Following this, counsel for the defendant produced a copy of the complaint filed in the prior suit, and, apparently reading from it, inquired of plaintiff if it did not contain allegations indicating permanent injury. An objection to the question was overruled and plaintiff answered that the complaint contained the allegations specified. Thus, we are moved to observe, even if it can be said, as defendant seems to feel, that the part of the prior complaint in question did in fact contradict plaintiff's direct testimony as to the permanency of the 1957 neck injury, defendant was successful in impeaching the witness before the jury. Immediately thereafter, however, rulings of the trial court stifled efforts of defendant: to inquire whether the prior complaint had not alleged that plaintiff had received severe injuries about his head, neck, spine, back, arms, legs and nerves; to ask whether it had alleged that plaintiff had been compelled to expend large sums for medical and surgical expenses; and to learn the name of the attorney who had represented plaintiff in connection with the 1957 accident. It is now contended that the latter rulings of the court erroneously prevented defendant from impeaching the plaintiff.

The record shows that the prior complaint was not signed by plaintiff, but by an attorney on his behalf, and plaintiff testified that he was unaware what his attorney had filed. Under the circumstances, and bearing in mind that the prior complaint did not relate to the occurrence at issue in the trial, see: Carlson v. New York Life Ins. Co., 76 Ill App2d 187, 222 NE2d 363; McGourty v. Chiapetti, 38 Ill App2d 165, 186 NE2d 102, there is in our mind a serious question as to whether plaintiff could properly be impeached from a document which was the product of the attorney and of which plaintiff had no knowledge as to its contents. (See:

147

Wendzinski v. Madison Coal Corp., 282 Ill 32, 37, 118 NE 435; Taylor v. Alton & E. R. Co., 258 Ill App 293, 299–300; Hobart v. O'Brien, (1st Cir) 243 F2d 735, 744; Jimenez v. Starkey, 85 Arizona 194, 335 P2d 83, 84.) It is enough to say, however, that the evidence excluded by the trial court's limitation of the cross-examination did not in our opinion serve to impeach the plaintiff. On his direct examination, plaintiff testified that he had received a whiplash injury to his neck and was not asked, and did not say, that it was the only injury received in the 1957 accident. Accordingly, there was no inconsistency with the allegation of the prior complaint that plaintiff had received injuries to his head, neck, back, spine, arms, legs, body and nerves. Similarly, there was no marked inconsistency with the allegations of the complaint that plaintiff had expended large sums for medical and surgical services. While plaintiff was not questioned on direct examination as to the medical expenses incurred, he testified that he had x rays, a traction device and periodic treatments at the office of Dr. Dasso and it must be presumed that such services were not free. Finally, and so far as the jury was concerned, the disclosure of the name of the attorney who had represented plaintiff in the 1957 matter would not have served to impeach anything testified to by plaintiff on direct examination. The record shows that the name of the attorney was on the complaint and had the defendant wished to call him to establish plaintiff's knowledge of the contents of the prior complaint it was at liberty to do so.

■■ While the defendant was presenting its case, the court refused to receive a copy of the prior complaint into evidence and it is now urged that the exhibit was admissible both for purposes of impeachment and as substantive evidence that plaintiff's neck injury had been proximately caused by the 1957 accident. What has already been said disposes of the matter of impeachment,

and in our opinion the claim that the exhibit should have been received as substantive evidence relating to the issues of the case is equally untenable. The theory that plaintiff's neck injury was caused by the prior accident was an affirmative defense and defendant had the burden of proof on such point. And as is shown more fully by the extended discussion of the problem in Marut v. Costello, 53 Ill App2d 340, 202 NE2d 853, and Caley v. Manicke, 29 Ill App2d 323, 173 NE2d 209, the allegations of injury contained in the prior complaint could have no relevancy unless, and until, defendant produced competent medical proof that a reasonable connection existed between the 1957 injury and the injury for which recovery was sought in the present action. Defendant failed to produce this connecting proof, and the trial court properly refused to accept the exhibit as substantive evidence.

■ In like manner, the court did not err in refusing to permit defendant to introduce a 1957 photograph, which portrayed plaintiff using a traction device on his neck. It could not serve to impeach plaintiff, since he testified freely on his direct examination that he used such a device after the 1957 accident, and, on the state of the record, could have no relevancy on the question of whether there was a connection between the neck injuries suffered in 1957 and 1964.

■ Defendant's next contention centers around the testimony of Dr. Francis J. Cenedella, who had been plaintiff's regular physician since 1950. This witness recounted in sequence his treatment of the plaintiff for such things as prostate trouble, nervousness, and internal complaints over the years, and then testified in detail as to the injuries received by plaintiff in the 1964 accident, their treatment, the response to treatment, and as to plaintiff's physical state when last examined. So far as the 1957 neck injury was concerned, the doctor said he had seen the plaintiff three times in connection therewith, once at the hospital and twice in his office, but did not thereafter

treat him, inasmuch as plaintiff went to Dr. Dasso. Immediately after his detailed examination concerning the 1964 neck injury and its effects, the witness expressed the opinion that the injury and condition he had treated were causally related to the accident, and the further opinion that the "condition of the patient observed (by him)" might or could be permanent. Although we do not find the point was preserved for review by a clear and proper objection, defendant argues here that it was error to permit the doctor to express the latter opinion for the reason that it is impossible to know whether the word "condition" in the phrase quoted above, had reference to plaintiff's prostate trouble, his internal complaints, his nervousness or his physical condition resulting from the 1964 accident. To our minds this argument is a ponderous exercise in semantics based upon an unwarranted isolation of one phrase of many pages of testimony. When the entire testimony of the witness is read in proper sequence, any person of average intelligence, be he juror, judge or lawyer, would know and understand that the doctor was expressing an opinion as to the permanency of the conditions he observed as a result of the injuries incurred in the 1964 accident.

The first medical witness to testify was Dr. Harold Jersild, an orthopedic surgeon, to whom plaintiff had been referred by Dr. Cenedella. On cross-examination by defendant, he testified without objection that since plaintiff had incurred a neck injury in 1957, it could be possible for the latter to simulate the symptoms of a neck injury at the present time. (See: Levitan v. Chicago City Ry. Co., 207 Ill App 384.) Thereafter, when Dr. Cenedella was being cross-examined by defendant he was asked: "Doctor, do motives of gain or emotional gratification sometimes play a part in a patient's illness or recovery?" An objection by plaintiff was sustained, and it is now contended that the question did no more than to inquire if a person educated in the symptoms from a previous

experience might not simulate an injury, and that the court's ruling "precluded every possibility" for the jury to infer that plaintiff's complaints in the present case were simulated. We cannot agree with the construction defendant now puts on the question. Quite obviously it went beyond a mere inquiry into simulation and, we believe, bordered on the irrelevant. Most certainly, in light of Dr. Jersild's cross-examination and further cross-examination of Dr. Cenedella in a similar vein, there is no merit to the contention that the ruling on this single question precluded the jury from considering the matter of simulation.

 When Dr. Cenedella was questioned by plaintiff on redirect examination, he was asked if he had any reason to believe plaintiff was simulating anything in the two and one-half years which had intervened since the 1964 accident. To this question he responded "no," and added that "I always give the patient the benefit of the doubt." No motion was made to strike the voluntary statement of the witness and the only objection made to the question was that it was not proper redirect examination. Accordingly, we are not at liberty to consider the objection now made that the statement and question usurped the function of the jury to determine one of the ultimate issues of the case. A specific objection is a waiver of all grounds not specified, and we cannot say an objection that a question is not proper redirect examination raises or preserves the point that the question invaded the province of the jury. (Cf. City of Chicago v. Saldman, 225 Ill 625, 80 NE 349.) Furthermore, it is axiomatic that objections to evidence cannot be made for the first time on review. DeMarco v. McGill, 402 Ill 46, 83 NE2d 313; Sundstrom v. Village of Oak Park, 374 Ill 632, 30 NE2d 58.

██ Plaintiff's Instruction No. 6 was an issues instruction and, among other things, advised the jury of plaintiff's claim that "defendant was negligent in one or

more of the following respects: . . . (2) Made a left turn into the left side of plaintiff's automobile from a direct southerly course at a time when plaintiff's vehicle was proceeding straight northerly across the intersection on a green signal for northbound traffic. . . ." Defendant objected at the conference on instructions that there was no evidence from which the jury could conclude that defendant's vehicle had struck the left side of plaintiff's car and, relying upon those decisions which hold it to be erroneous to give an instruction for which there is no support in the evidence, (e. g., Burns v. Stouffer, 344 Ill App 105, 100 NE2d 507; Fraider v. Hannah, 338 Ill App 440, 87 NE2d 795), it renews that objection here. On examination of the record we must agree that the tenor of all the evidence was that defendant's truck had started its left turn and was struck by plaintiff's car as the collision occurred, and that there was no evidence that the truck struck the left side of plaintiff's car as stated in the instruction. It is clear, however, that this deficiency does not warrant a reversal. Since it was an issues instruction, presenting multiple theories, the jury could not have been misled. Moreover, there is little doubt about defendant's negligence, which is not questioned here, and the jury's verdict finds support and justification in evidence supporting other instructions to the jury.

█ Defendant further attacks the same instruction on the ground that no companion instruction was given to define the words "proximate cause." While there are several grounds upon which this contention could be rejected, it is sufficient to say that it was not made at the conference on instructions and may not therefore be considered on appeal. Stewart v. DuPlessis, 42 Ill App2d 192, 191 NE2d 622; Saunders v. Schultz, 20 Ill2d 301, 170 NE2d 163.

██ Defendant next complains of Plaintiff's Instructions Nos. 9 and 11, both damage instructions, contending there was no evidence: (a) that plaintiff would

suffer a future loss of earnings, and (b) that plaintiff would suffer damage due to the aggravation of a pre-existing ailment or condition. Both were IPI instructions and were properly given. Although defendant argues to the contrary, there is competent evidence that plaintiff's neck injury is permanent and that it has affected his earning capacity and will continue to do so. Similarly, over and above any consideration of the 1957 neck injury, there was evidence that prior conditions of nervousness, headaches and fatigue had worsened as the result of the occurrence which provoked the instant trial.

Objection is also made by defendant to the refusal of the trial court to give its tendered Instruction No. 1 which dealt with the presumption in law that the failure of a party to produce testimony or physical evidence within his control creates a presumption that such evidence, if produced, would have been adverse. (Beery v. Breed, 311 Ill App 469, 36 NE2d 591.) Applied here, it is defendant's argument that because Dr. Dasso was not called to corroborate plaintiff's testimony that he had fully recovered from the 1957 neck injury, it was entitled to the presumption that the doctor's testimony would have been adverse. Dr. Dasso, however, was equally as available as a witness for defendant and could have been produced by reasonable diligence. What is more, the burden of proving the defense that plaintiff's condition resulted from the 1957 accident was on defendant. The court did not err in refusing the instruction.

For its final contention, defendant asserts that the verdict of $23,000 is excessive and not supported by the evidence, particularly in light of the fact that plaintiff's special damages totalled $2,270.20. Once again, however, defendant's position assumes there was no evidence of permanent injury, no evidence of lost earnings, and no evidence that plaintiff's future ability to earn had been impaired. Refutation for each of these

153

assumptions is found in the testimony of plaintiff, his doctors and his employer, and we cannot say, on the record before us, that the award is so excessive as to indicate passion and prejudice on the part of the jury. Unless a court of review can find that a jury was so motivated, its verdict will not be disturbed on review. Lau v. West Towns Bus Co., 16 Ill2d 442, 158 NE2d 63; Lubin v. Goldblatt Bros., Inc., 37 Ill App2d 437, 186 NE2d 64.

We conclude, therefor, that the amount of the verdict was supported by the evidence and since no reversible error occurred at the trial, the judgment appealed from is affirmed.

Judgment affirmed.

ALLOY, P. J. and STOUDER, J., concur.