(No. 51830

JOHNS-MANVILLE PRODUCTS CORPORATION, Appellant, v. THE INDUSTRIAL COMMISSION *et al.* (Dorothy Smith, Appellee).

*Opinion filed December 3, 1979.—Rehearing denied February 1, 1980.*

Rooks, Pitts, Fullagar & Poust, of Chicago (Daniel P. Socha, Robert K. Bush and Ian M. Sherman, of counsel), for appellant.

Raymond L. Lannon, Ltd., of Chicago (Raymond L. Lannon and Patricia C. Lannon, of counsel), for appellee.

MR. JUSTICE RYAN delivered the opinion of the court:

This appeal concerns the compensability of a fatal heart attack under the Workmen's Compensation Act (Ill. Rev. Stat. 1973, ch. 48, par. 138.1 *et seq.*). Claimant is the widow of Allen Smith, an employee of the Johns-Manville Products Corporation who died from a heart attack suffered several hours after his return home from work. The arbitrator denied compensation. On review, the Industrial Commission awarded compensation, and the circuit court of Lake County confirmed the decision of the Commission. Johns-Manville appeals directly to this court under our Rule 302(a) (58 Ill. 2d R. 302(a)). At the time of his death, Smith was 60 years of age, 5 feet 6 inches tall and weighed approximately 350 pounds. Medical testimony clearly established that Smith suffered acute congestive heart failure due to a preexisting heart disease. The main issue on appeal is whether the nature of Smith's employment contributed to and aggravated his preexisting heart condition; that is, whether Smith sustained accidental injuries arising out of and in the course of his employment on July 13, 1974, which resulted in his death on July 14, 1974.

Smith was employed as a pipe hydrotester at Johns-Manville in Waukegan. The pipes tested were made of asbestos cement, weighed from 200 to 1,000 pounds, and measured 13 feet in length and 10 or 14 inches in diameter. Smith's primary duty consisted of aligning these pipes onto a testing machine. Such alignment required Smith to roll the pipes up an incline of approximately 3 feet in order to get them to the saddle of the machine. The pipes tested varied in measurement. In the event that a pipe with a different diameter was tested, Smith was required to change the heads of the tester. To do so, he

had to climb a ladder of approximately 20 feet. At times the pipes tested were unable to withstand the pressure applied. In the event of a complete break in a pipe, Smith, in his capacity as tester, was required to pick the pieces of broken pipe out from the testing machine. This activity would necessitate the bending of the body. The job of tester is described as a standing job. According to a job description and evaluation of a hydrotester operator which was prepared for Johns-Manville and dated July 31, 1967, the job required above-average physical demands.

Smith reported to work on July 13, 1974, at 6:30 a.m. and performed his usual duties. The evidence presented in the hearings below supports an inference that the work load on that date was lighter than usual. However, at least one time during that shift, Smith was required to climb 20 feet and replace the heads on the testing machine. During the arbitration hearing, and also before the Industrial Commission, several of the deceased's coworkers testified as to their impressions of Smith's behavior on July 13, 1974. John Carter, a coworker, stated that Smith told him that he didn't feel well. John Barnes, an employee of Johns-Manville who worked in close proximity to the deceased, also testified that Smith told him he did not feel well. Barnes also stated that the deceased complained of pain in his legs and showed Barnes his swollen ankles. Barnes observed Smith later that day in the lunchroom in what appeared to Barnes to be an upright sleeping position; such behavior was reportedly uncharacteristic of the deceased. Both Carter and Barnes observed that Smith perspired profusely on July 13, 1974. According to Carter, Barnes and Cecil Elrod, another coworker, the work area was extremely hot and the ventilation inadequate on that date.

Smith left work at 3 p.m., which was the usual time his shift ended. He arrived at his home shortly thereafter. His wife, the claimant in this action, testified before the arbitrator and the Industrial Commission that her husband

appeared listless and that his ankles were very swollen. Mrs. Smith further stated that her husband did not follow his usual after-work routine. Instead, he ate a small meal and retired to a reclining chair where he watched the television and dozed for the remainder of the evening. Mrs. Smith stated that her husband's breathing was unusually heavy that evening. The following morning, July 14, 1974, Mrs. Smith found her husband dead in his bed. An autopsy was performed. The autopsy report indicated the conditions which gave rise to the cause of death to be "acute congestive heart failure, with bilateral pulmonary congestion and edema," marked "cardiac hypertrophy with coronary insufficiency and profound obesity."

Several doctors testified at the arbitration hearing. Dr. William Fitzsimmons, a treating physician, testified for the claimant and stated that Smith's medical records indicated a preexisting cardiac deficiency. Specifically, the doctor stated that an examination of the records revealed "cardial enlargement and hypertension." Dr. Fitzsimmons also noted evidence of lung pathology. He stated that swelling of the feet and difficulty in breathing were symptoms secondary to congestive heart failure. In response to a hypothetical question, Dr. Fitzsimmons testified that exertion may bring about heart failure and the fact itself of the occurrence of a congestive heart failure indicates an event beyond the body's tolerance. Since congestive heart failure does not occur instantaneously, once the process is started, according to Dr. Fitzsimmons, any physical activity would aggravate the condition. Thus, Dr. Fitzsimmons concluded that there could be a causal connection between Smith's employment and his subsequent demise. Dr. Vern L. Zech testified for the respondent. He stated that Smith suffered from a heart disease for approximately 10 years and that physical activity did not correlate with the occurrence of death. Dr. Zech's testimony was based on the premise that Smith's employment duties consisted of pushing buttons. A third doctor, Dr.

Gloucester A. Price, also testified for the respondent. He concluded that an oxygen insufficiency had caused Smith to die and that the work requirement had no correlation with the cause of the deceased's coronary disease. At the close of the presentation of the evidence, the arbitrator denied the death benefit award on the ground that the deceased did not suffer an accidental injury arising out of and in the course of his employment.

At the review hearing before the Industrial Commission, Dr. James T. Hicks was called to testify on behalf of the claimant. In response to a hypothetical question, Dr. Hicks stated that there was a causal relationship between the death of an individual with a physical history such as that of Smith and the duties required of a hydrotester. The Industrial Commission reversed the arbitrator's findings and awarded the death benefit to Smith's widow. The circuit court of Lake County confirmed the decision of the Industrial Commission.

On appeal to this court, Johns-Manville contends that the Industrial Commission's decision on the issue of accidental injury is contrary to the manifest weight of the evidence and therefore must be reversed. After a review of the records in the proceedings below, we affirm the judgment of the Lake County circuit court.

In a recent opinion, this court has stated that the employer takes the employee as he finds him. (*County of Cook v. Industrial Com.* (1977), 69 Ill. 2d 10, 17.) In accordance with this principle, the mere fact that an employee may suffer from a preexisting condition will be insufficient to preclude recovery under the Act. Compensation will be awarded if the employee can show that the preexisting illness was aggravated or accelerated by the employment. (*County of Cook v. Industrial Com.* (1977), 69 Ill. 2d 10, 17.) This rule is subject to the following exception: Compensation will be denied where the employee's physical condition is so poor that any activity would constitute an overexertion, or where the evidence

establishes that the risk from the activity engaged in is no greater than that to which he would have been exposed had he not been so employed. *County of Cook v. Industrial Com.* (1977), 68 Ill. 2d 24; *Illinois Bell Telephone Co. v. Industrial Com.* (1966), 35 Ill. 2d 474.

Conflicting medical testimony was presented before the Industrial Commission. In response to a hypothetical question, Dr. Fitzsimmons and Dr. Hicks stated that there could be a causal relationship between the heart failure and the activities engaged in by a hydrotester. Dr. Zech stated that if Smith were his patient, he would not recommend physically strenuous work. Dr. Price testified, however, that there existed no correlation between heart failure and strenuous physical activity.

We have repeatedly held that the resolution of conflicting medical testimony falls within the purview of the Industrial Commission and that its finding will not be reversed unless contrary to the manifest weight of the evidence. (*Long v. Industrial Com.* (1979), 76 Ill. 2d 561; *Health & Hospitals Governing Com. v. Industrial Com.* (1978), 72 Ill. 2d 263, 274; *Pontiac Chair Co. v. Industrial Com.* (1974), 59 Ill. 2d 261, 266.) After a review of the record, we cannot say that the Commission's finding was contrary to the manifest weight of the evidence.

Johns-Manville also contends that the Commission erred in its finding that the deceased's injury was causally related to his employment since the work performed on July 13, 1974, required less exertion than usually required of a hydrotester. Although the specific activities engaged in on July 13, 1974, were described as unusually light, the general duties of a hydrotester demand more strenuous physical exertion than that which is required in average daily activities. Illinois follows the rule that states that usual exertion demanded by the injured employee's employment may be causally connected with heart attacks. It is not necessary that any unusual exertion be demonstrated to have preceded the attack. (*Rock Road*

*Construction Co. v. Industrial Com.* (1967), 37 Ill. 2d 123, 129.) Further, it was not necessary for the determination of causality that the employee die from the heart failure while at the place of employment. (*Illinois Valley Irrigation, Inc. v. Industrial Com.* (1977), 66 Ill. 2d 234.) Thus, it was reasonable and therefore permissible for the Commission to infer that the usual activities of the employment aggravated Smith's preexisting condition, thus rendering his heart failure a compensable injury under the Act.

A second issue raised on appeal is based on respondent's contention that the decision of the Industrial Commission was predicated on inadmissible evidence. Specifically, the respondent states that the Commission's finding was based on the medical opinions of Drs. Fitzsimmons and Hicks. The finding must be reversed, according to the respondent, since each doctor's testimony was elicited through the use of hypothetical questions which allegedly contained incompetent hearsay and misstatements of material facts.

Initially we note that the Industrial Commission did not make any special findings and, further, that respondent did not request that any such findings be made. Therefore, the assertion that the Commission's finding was based on the doctor's testimony is no more than mere speculation on the part of the respondent. We will, however, address ourselves to the respondent's argument concerning the admissibility of the hypothetical questions.

Our review of the record indicates that the respondent made numerous objections to the hypothetical questions. The respondent failed, however, to base his objection to the admission of the hypothetical questions on hearsay grounds. It is well established that an objection must specify the grounds for the objection and that no other grounds than those stated will be considered on appeal. (*Stump v. Dudley* (1918), 285 Ill. 46, 48.) This rule applies with equal force to objections raised in response to

hypothetical questions. (*Goldberg v. Capital Freight Lines, Ltd.* (1943), 382 Ill. 283, 290.) In *City of Chicago v. Saldman* (1907), 225 Ill. 625, an action for damages for personal injuries, plaintiff's doctors were asked certain hypothetical questions. The defendant's attorney objected to the questions on the ground that they were based on facts not in evidence. In response to this objection, plaintiff's attorney presented proof of the disputed facts through questions asked the doctors. Although the defendant's attorney did not object to such proof at the trial court, he argued on appeal that the hearing on the disputed facts invaded the province of the jury. This court stated:

> "This objection was not pointed out to the trial court and consequently there was no ruling on it. The objection was not even general in character, but was based upon the specific ground that the facts had not been proved, and being so limited, the objection now made cannot be considered. [Citation.]" (*City of Chicago v. Saldman* (1907), 225 Ill. 625, 628.)

Accord, *Greim v. Sharpe Motor Lines* (1968), 101 Ill. App. 2d 142, 151.

Based on the foregoing, it is clear that the respondent cannot now claim that the hypothetical questions put to the doctors contained inadmissible hearsay. As the respondent failed to raise this specific objection at the time the hypothetical questions were propounded, it has waived its right to raise it on appeal.

The respondent also claims that the finding of the Commission must be reversed as it was based on the doctors' testimony which, in turn, was based on misstatements of material facts. We find this argument to also be without merit. In presenting evidence by a hypothetical question, counsel propounding the question has a right to ask it, assuming only the facts as he perceives them to be shown by the evidence. (*Gus T. Handge Painting Co. v.*

*Industrial Com.* (1965), 33 Ill. 2d 201, 206; *Robert Holmes & Brothers, Inc. v. Industrial Com.* (1945), 391 Ill. 277, 279 (interrogatories).) From our reading of the record, it appears that the evidence was unclear concerning those facts the respondent claims claimant misstated. The respondent had an opportunity to challenge the controverted facts on cross-examination. Since it could have presented a hypothetical question to the doctors which incorporated a statement of facts as perceived by the defense, this is an improper subject to raise on review.

A final issue raised by the respondent on appeal concerns the alleged error of the Commission in its limitation of the re-cross-examination of Dr. Hicks. The Commission refused to allow Dr. Hicks to respond to two questions on re-cross-examination. The scope and extent of cross-examination and re-cross-examination are within the discretion of the court. (See, *e.g., People v. Pieper* (1951), 410 Ill. 15, 18.) A review of the record leads us to conclude that the Commission did not abuse its discretion in limiting the re-cross-examination of Dr. Hicks. The first question asked concerned matters to which Dr. Hicks had previously testified in detail during the direct examination, cross-examination and redirect examination. The second question was not responsive to testimony elicited during redirect examination but, rather, covered essentially the same material that was brought out during cross-examination. Thus, we find the respondent's third argument to also be without merit.

Accordingly, we find (1) that the Commission's decision was not against the manifest weight of the evidence; (2) that the respondent waived his right to object to the admission of the medical opinions; and (3) that the Commission did not err in its limitation of the re-cross-examination of Dr. Hicks. Therefore, the judgment of the circuit court of Lake County, confirming the Industrial Commission's award, is affirmed.

*Judgment affirmed.*