JUDITH A. AUTON, Adm'r of the Estate of Rodney J. Auton, Deceased, Plaintiff-Appellant, v. LOGAN LANDFILL, INC., et al., Defendants (Deere & Company, Defendant-Appellee).

Fourth District   No. 4—83—0127

Opinion filed December 28, 1983.—Rehearing denied March 15, 1984.

Robert D. Owen, Linda M. Castleman, and Robert M. Owen, all of Owen, Roberts, Susler, Ltd., of Decatur, for appellant.

Richard F. Record, Jr., and Michael D. Gifford, both of Craig & Craig, of Mattoon, for appellee.

PRESIDING JUSTICE MILLS delivered the opinion of the court:
A highway construction accident.
A products liability suit.
A jury verdict for the manufacturer.
We affirm.

### THE FACTS
In the fall of 1980, Rodney Auton was working on the Fitzgerald Road highway construction project in Decatur. He was assigned to

shoot grade for the operator of the dirt scraper on the project. As a grade shooter, Auton used a hand level and a surveyor's stake to check the level of dirt in the area being scraped. Then he would indicate to the scraper operator the amount of dirt to be removed.

On the morning of October 13, Auton was shooting grade for Keith Spencer. Spencer had made several runs that morning and had backed up to make another when he noticed Auton's hand level in the bowl of the scraper. Spencer dismounted his machine and found Auton crushed to death under the rear tires.

Auton's wife, Judith, filed suit against John Deere—the manufacturer of the scraper—claiming that the machine was unreasonably dangerous. She alleged that it was not equipped with adequate rear view mirrors and that the design of the wiring leading to the backup warning signal was faulty. After a jury trial, judgment was entered on the jury's verdict in Deere's favor.

On appeal, Judith raises several issues, the first few of which deal with the doctrine of assumption of risk.

### ASSUMPTION OF RISK

The trial judge instructed the jury that if Deere proved that the decedent assumed the risk of working with the scraper, then Judith Auton was completely barred from obtaining any recovery from Deere. Auton argues that it was reversible error for the court to give the instruction because the Supreme Court of Illinois recently changed the rule that assumption of risk acts as a total bar to recovery. Although she is correct that the supreme court did recently change the rule, that change is not controlling in this case.

The rule in Illinois at the time of the trial was that if a defendant could prove his affirmative defense that the plaintiff assumed the risk, then the plaintiff was totally barred from seeking recovery for his damages. (See *Williams v. Brown Manufacturing Co.* (1970), 45 Ill. 2d 418, 261 N.E.2d 305.) That rule was changed, however, in the recent case of *Coney v. J.L.G. Industries, Inc.* (1983), 97 Ill. 2d 104, 119, 454 N.E.2d 197, 204, where the supreme court stated:

> "[T]he defenses of misuse and assumption of the risk will no longer bar recovery. Instead, such misconduct will be compared in the apportionment of damages. Specifically, we hold: Once defendant's liability is established, and where both the defective product and plaintiff's misconduct contribute to cause the damages, the comparative fault principle will operate to reduce plaintiff's recovery by that amount which the trier of fact finds him at fault."

Although *Coney* changed the law, that change had not occurred until after the appeal in this case had been filed. Therefore, *Coney*'s application in the present case depends on whether the change wrought by the decision should be applied *retroactively*.

■ Unfortunately, the supreme court did not state in *Coney* whether the new rule regarding assumption of risk should be applied retroactively or prospectively. Historically, the supreme court has applied new rules which radically change existing tort law prospectively. (See, *e.g., Alvis v. Ribar* (1981), 85 Ill. 2d 1, 421 N.E.2d 886; *Skinner v. Reed-Prentice Division Package Machinery Co.* (1977), 70 Ill. 2d 1, 374 N.E.2d 437.) And, as the supreme court stated in *Molitor v. Kaneland Community Unit District No. 302* (1959), 18 Ill. 2d 11, 27, 163 N.E.2d 89, 97, "an overruling decision should be given only prospective operation whenever injustice or hardship due to reliance on the overruled decisions would thereby be averted." The situation in the present case clearly meets that test. Consequently, we hold that the rule in *Coney should not* be applied retroactively. *Ergo*, the trial court did not err when it instructed the jury that the decedent's assumption of the risk acted as a total bar to recovery.

■ Next, Auton argues that the trial judge erred in denying her motion for a directed verdict on Deere's defense that the decedent assumed the risk. Her argument here is two-fold. First, she contends that her husband was not a user of the scraper and therefore assumption of risk was not a proper defense. Secondly, she maintains that Deere failed to allege any acts by her husband which constitute assumption of risk. We disagree with her on both points.

*First,* as part of a two-man team assigned to operate the scraper, the decedent was a "user" of that machine. As a grade shooter, it was his responsibility to direct and assist the driver. He was directly involved in the operation of the machine. He was a user of the machine.

*Secondly,* Deere's allegations were sufficient to allege assumption of risk. Deere alleged that the decedent knew that the backup warning alarm on the scraper was malfunctioning and that the decedent continued to use the machine. That is sufficient allegation to allege assumption of risk.

### MANIFEST WEIGHT OF THE EVIDENCE

■ Auton argues that the jury's verdict in Deere's favor was against the manifest weight of the evidence because the evidence clearly and unequivocally demonstrated that, as designed and manufactured by Deere, the scraper was unreasonably dangerous. A ver-

dict is against the manifest weight of the evidence only when the opposite conclusion is clearly apparent or when the findings appear to be unreasonable, arbitrary, or not based on the evidence. *Duffek v. Vanderhei* (1980), 81 Ill. App. 3d 1078, 401 N.E.2d 1145.

At the trial, Auton attempted to persuade the jury that Deere designed the wiring leading to the backup alarm in such a manner that it would not withstand continuous use and therefore the alarm would eventually fail. She argued that while designing, testing, and manufacturing the scraper, Deere became aware of the problem and failed to either correct it or to warn potential users of its existence. She maintained that this failure, coupled with the inadequate rear view mirrors, resulted in an unreasonably dangerous condition which caused the death of her husband. Deere, on the other hand, maintained at trial that the scraper was not unreasonably dangerous. After hearing a great deal of testimony in support of both parties' arguments, the jury chose to accept Deere's position.

On careful review of the record, we are not convinced that the jury's verdict was against the manifest weight of the evidence.

### THE NOTE FROM THE JURY

During jury deliberations, the jury foremen sent the trial judge the following question:

"Our current question involves whether any installation whereby the electrical wiring passes through the hitch area or over the hitch area as is done by other manufacturers can be regarded as a condition that is unreasonably unsafe or can it be construed to be reasonably safe and still pass through or over the hitch area?"

Auton's counsel asked the judge to answer the jury that whether or not similar conditions in other scrapers rendered them unreasonably dangerous was not an issue in this case and should not be considered by the jury. Auton's counsel was concerned that two of the jury members were employees of Caterpillar Tractor Company and that they might be reluctant to find Deere liable because such a verdict might result in Caterpillar being found liable in some later case.

The court refused to give the answer Auton's counsel requested and instead instructed the jury:

"The evidence has been presented and you have been instructed by the Court what law is applicable. The issues to be decided by you and the applicable law is stated in the instructions. You must follow the instructions as you continue your deliberations."

On appeal, Auton argues that the court's refusal to give the answer her attorney requested constitutes reversible error. We disagree.

Auton's characterization of the two jurors' concern about their employer's future liability is pure speculation. There is no basis whatever in the record for her argument. The jury may have instead been concerned about whether Deere's design met industry standards and what effect that would have on Deere's liability. In any event, the jury was in fact asking the trial judge to decide one of the issues in the case—whether an electrical design which passes wiring through a hitch area is unreasonably dangerous *per se.* He could not have answered that question without unfairly prejudicing the position of one of the parties. Indeed, he chose to respond with a neutral answer which guided the jurors back to their instructions.

The court responded to the jury's question correctly. No error.

## DISCOVERY

■ Auton argues that she was denied a fair trial because Deere provided only fractional disclosures to several of her discovery requests. She contends that Deere's alleged violations of the rules of discovery require that this court reverse the jury's verdict.

Although this court views fractional disclosure with great disfavor, the specific instances Auton complains of do not constitute fractional disclosure. Deere's answers were not as complete as Auton hoped they would be. But, it appears to us that the problem lay not with Deere's answers but instead with Auton's requests. For example, in one interrogatory Auton asked Deere to state the names of all the persons involved in the development of the design of the wiring in the scraper. She complains that Deere's failure to provide her with the names of all the persons who knew of potential problems with the wiring design constituted fractional disclosure. We disagree. She got what she asked for—no more and no less—and she can't be heard now to complain that Deere did not volunteer any extra information.

In another interrogatory, Auton asked Deere to supply the names of everyone who foresaw the failure of the wiring harness. Auton argues that Deere supplied only fractional disclosure when it failed to supply the name of one of its employees who had discussed the problem with one of the engineers on the scraper project. This was not fractional disclosure. Auton chose not to depose the project engineer in order to learn to whom he spoke concerning the possible wiring problems and it was not bad faith on Deere's part to not know and supply the names of all its employees who had had conversations concerning the wiring problems.

In sum, we find that the answers supplied by Deere to Auton's discovery requests did not constitute fractional disclosure. A plaintiff should not be allowed to simply cast her hook into the water and expect the fish to impale itself thereon. No error.

### DEERE'S PAYMENT TO SPENCER

■ Finally, Auton argues that it was reversible error for the trial court to refuse to allow her to elicit testimony from Keith Spencer, the operator of the scraper, concerning witness fees paid by Deere to him during an earlier trial. As a general rule, it is permissible to show that a witness has an interest in the outcome of the litigation. But admission of the impeaching testimony lies within the discretion of the trial judge. We will not overturn the trial judge's decision unless it is clear that he abused his discretion. (See *Johns-Manville Products Corp. v. Industrial Com.* (1979), 78 Ill. 2d 171, 399 N.E.2d 606.) Here, because the fees were paid in a prior mistrial of this case and the relevancy here is debatable, we find that the court did not abuse its discretion when it refused to allow Auton to elicit the testimony from Spencer.

Therefore, for all of the above reasons, we affirm.

Affirmed.

MILLER and WEBBER, JJ., concur.