PALMER HOUSE, Appellant, v. THE INDUSTRIAL COMMISSION *et al.* (Virginia Petenes, Appellee).

First District (Industrial Commission Division)   No. 1—89—1092WC

Opinion filed June 22, 1990.

Cook & Ritter, of Chicago (William J. Cook, S. Michael Ritter, and Lawrence C. Cassano, of counsel), for appellant.

Gaines & Gaines, of Chicago, for appellee.

PRESIDING JUSTICE BARRY delivered the opinion of the court:

An arbitrator found that the petitioner, Virginia Petenes, sustained injuries arising out of and in the course of her employment with the respondent, Palmer House, and awarded her temporary total disability benefits (TTD) in the amount of $140 per week for 188 weeks, $7,484.60 in medical expenses, and permanent disability to the extent of 80% of a man as a whole (Ill. Rev. Stat. 1981, ch. 48, pars. 138.8(b), (a), (d)(2)). The Industrial Commission (Commission) affirmed the arbitrator's decision, and the circuit court confirmed the Commission's decision. The respondent appeals.

The record reveals that on November 15, 1982, the petitioner filed an application for adjustment of claim and a request for a hearing, alleging that she was entitled to compensation from the respondent under the Workers' Compensation Act (the Act) (Ill. Rev. Stat. 1981, ch. 48, par. 138.1 *et seq.*). At the hearing before the arbitrator, the petitioner testified that she had been employed as a waitress by the respondent since 1965. On September 15, 1981, while carrying a hand tray with about 10 to 15 dishes on it, the petitioner slipped on what she believed was water. She stated that her feet went out from under her and she fell backward. At the time, she was 52 years old, weighed 190 pounds, and stood 5 feet 4 inches tall.

The petitioner was subsequently taken to the respondent's clinic, Herron Medical Center, where X rays of her neck and back were taken. Heat treatments were prescribed for her pain.

The petitioner testified that she then went to her family physician, Dr. Revis. He prescribed muscle relaxants and analgesics for the pain, and referred her to an orthopedic surgeon, Dr. George Tsatsos.

Dr. Tsatsos examined the petitioner on October 8, 1981. His records indicated that no fractures were found. X rays of the lumbar spine showed some narrowing between the L4 and L5 vertebrae. He prescribed heat treatment for her back and physical therapy. In an October 29, 1981, letter to the respondent, Dr. Tsatsos stated that the petitioner could return to light work.

On January 4, 1982, Dr. Tsatsos admitted the petitioner to Gottlieb Memorial Hospital, where she underwent a series of tests. A CAT scan revealed a bulging of the disc at L4-L5 and L5-S1, which was confirmed by a lumbar myelogram. Though she received heat treatments and extensive physical therapy, her condition improved only slightly. The petitioner was diagnosed as having degenerative disc disease at L4-L5 and L5-S1, in addition to lumbar radiculopathy. She remained under Dr. Tsatsos's care throughout 1982.

In May 1982, the petitioner was seen by another orthopedic surgeon, Dr. Thomas McNeill. Dr. McNeill found that the petitioner was suffering from degenerative osteoarthritis of the spine, including the facets and discs, and also degenerative "spondylo" at L4-L5. He noted that although the petitioner was taking analgesics for the pain, her condition was still not improving.

The petitioner was then referred to the Rehabilitation Institute of Chicago for further evaluation. The Institute's report, prepared in consultation with Dr. Richard Blonsky and other staff members, stated that the petitioner's prognosis for returning to work was poor even with redirection and a successful rehabilitation program. Redirection for the petitioner would be difficult because of her limited vocational experience, age, and lack of education. The report specifically noted that the petitioner should not return to waitressing because of the inherent risk of reinjury. The Institute's records also showed that the respondent refused to be responsible for payment of any services rendered to the petitioner.

The petitioner continued seeking medical treatment. In June of 1984, she was evaluated at the Mayo Clinic in Rochester, Minnesota. The report from Mayo was prepared by Dr. Evangelos Frigas, in consultation with specialists in neurology, physical medicine, neurosurgery, and orthopedics. It stated that X rays of the petitioner's lumbar spine showed a narrowed interspace at L4 with hypertrophic changes in the lumbar spine. X rays of the cervical spine also revealed a slight narrowing of the C4 interspace. A CAT scan revealed a possible extruded disc at L4, with some stenosis of the nerve roots bilaterally.

The report further noted: "The consensus of the doctors who saw her in consultation was that this is a pain syndrome without evidence of objective neurologic dysfunction. *** In summary, our diagnoses are: 1) diffuse body pain, headache, and low back pain plus lower extremity pain secondary to pain syndrome. *** 2) Carpal tunnel syndrome, mild bilaterally ***. 3) Dizziness of undetermined etiology. 4) Reactive depression. *** 5) Exogenous obesity. *** 6) Hypertension suspect. *** 7) Slight elevation of the gamma-globulins, polyclonal

type, plus slight elevation of the gamma-glutamyl transpeptidase, both of undetermined etiology. *** 8) Stress incontinence with severe trigonitis."

The petitioner was also evaluated by the respondent's physician, Dr. E. Thomas Marquardt. Dr. Marquardt's report stated: "The patient arises out of a chair with marked difficulty. She walks with a very slow, antalgic gait using a cane in her right hand." He further noted that X rays taken of the lumbosacral spine revealed mild to moderate disc space narrowing at L4-L5 and L5-S1. Similarly, he found a very mild pseudospondylolisthesis at L4-L5 on a "degenerative basis." Dr. Marquardt noted that there was some indication from the petitioner's records that she might have been involved in an accident in 1976.

Based upon his evaluation, Dr. Marquardt concluded that the petitioner had been suffering from back problems prior to September 15, 1981. Further, he stated: "This patient has multiple diffuse subjective complaints referable to the neck, back, arms and legs. Many of her complaints are not substantiated by objective physical findings. There is no evidence of any hard-core neurologic deficits." In his opinion, the petitioner could return to work but should avoid repeated bending and should not lift anything weighing more than 15 to 20 pounds. He suggested that she could be employed as a switchboard operator.

In 1985, the petitioner went to Dr. Irwin Barnett because she was still in a great deal of pain. Dr. Barnett noted that the petitioner had marked restriction of motion on all movements of the lumbar and cervical spine. His diagnosis was that she suffered: (1) residuals of a lower back injury; (2) severe flattening of the fourth and fifth lumbar disc spaces; (3) spondylolisthesis involving L4; (4) defects in the interarticular region of L4-L5; (5) residuals of an injury to the cervical spine with marked cervical nerve root irritation; (6) narrowing of the fourth cervical disc space; and (7) residuals of a soft tissue and ligament and tendon injury of both hands and wrists.

The respondent presented the arbitrator with three letters that it had sent to the petitioner on February 4, May 16, and November 16, 1983, offering her employment opportunities within her work restrictions.

The arbitrator found that the petitioner's injuries arose out of and in the course of her employment with the respondent. He awarded her TTD of $140 per week for 188 weeks, crediting the respondent for $5,804.89 it had previously paid. The petitioner was also awarded $7,484.60 in medical expenses, and permanent disability of 80% under section 8(d)(2) of the Act (Ill. Rev. Stat. 1981, ch. 48, par. 138.8(d)(2)).

Rehabilitation was reserved under section 8(a) of the Act (Ill. Rev. Stat. 1981, ch. 48, par. 138.8(a)). The Commission affirmed the arbitrator's awards, and the circuit court confirmed the Commission's decision.

The respondent argues on appeal that the Commission's decision that the petitioner's condition of ill-being was causally related to the accidental injuries she sustained on September 15, 1981, was against the manifest weight of the evidence. It contends that the petitioner's back problems are degenerative in nature and therefore are not causally related to her accident.

■■■ For an injury to arise out of one's employment, the injury must have an origin in some risk connected with or incidental to the employment so that there is a causal connection between the employment and the injury. (*Fire King Oil Co. v. Industrial Comm'n* (1976), 62 Ill. 2d 293, 342 N.E.2d 1.) However, an employer takes the employee as it finds him. (*County of Cook v. Industrial Comm'n* (1977), 69 Ill. 2d 10, 370 N.E.2d 520.) The mere fact that an employee may suffer from a preexisting condition does not preclude recovery under the Act. Compensation will be awarded if the employee can show that the preexisting illness was aggravated or accelerated by the employment. (*Johns-Manville Products Corp. v. Industrial Comm'n* (1979), 78 Ill. 2d 171, 399 N.E.2d 606.) The factual determination of the Industrial Commission regarding the nature and extent of the disability will not be set aside unless it is contrary to the manifest weight of the evidence. *A.O. Smith Corp. v. Industrial Comm'n* (1977), 69 Ill. 2d 240, 371 N.E.2d 607.

■■ In the instant case, the record shows that since the date of the accident in 1981, the petitioner has received continuous treatment for her injuries. The consensus of the medical evidence reveals that the petitioner is suffering from a degenerative disc disease at L4-L5 and L5-S1. The CAT scans showed a bulging disc at L4-L5, with some stenosis of the nerve roots bilaterally. In 1985, the petitioner saw Dr. Barnett, who noted that she had severe flattening of the fourth and fifth lumbar disc spaces and spondylolisthesis at L4. Dr. Marquardt stated that the petitioner walked very slowly and had marked difficulty in moving about. While we note that the evidence indicates that the petitioner's condition is degenerative in nature, it also suggested that the petitioner's condition markedly worsened just after the accident. Accordingly, given the evidence that the injury aggravated the preexisting condition, we find that the Commission's determination that the petitioner's injuries arose out of and in the course of her employment was not against the manifest weight of the evidence.

The respondent also argues that the Commission's decision that the petitioner was entitled to 188 weeks of temporary total disability benefits was against the manifest weight of the evidence. It contends that the petitioner was not entitled to 188 weeks of TTD, because the respondent offered her employment within her restrictions on February 4, May 16, and November 16, 1983. Further, the respondent argues that there was no medical evidence showing that the petitioner could not perform light-duty work.

■■ ■ Initially, we note that an employee is temporarily totally disabled until he is restored or his condition is stabilized. (*Brinkmann v. Industrial Comm'n* (1980), 82 Ill. 2d 462, 413 N.E.2d 390.) To prove a claim for temporary total disability, the employee must show not only that he did not work, but also that he was unable to work. (*Boker v. Industrial Comm'n* (1986), 141 Ill. App. 3d 51, 489 N.E.2d 913.) The determination of whether an employee is temporarily totally disabled is a question of fact to be determined by the Industrial Commission, and unless its findings are contrary to the manifest weight of the evidence, they will not be set aside on review. *McKay Plating Co. v. Industrial Comm'n* (1982), 91 Ill. 2d 198, 437 N.E.2d 617.

The record shows that the respondent first offered the petitioner undefined employment "of a very light physical nature." It then offered her a job as a switchboard operator and then as an order taker in the room service department.

Dr. Marquardt indicated that the petitioner should avoid repeated bending and lifting, but that she could return to work as a switchboard operator. He also indicated, however, that the petitioner had marked difficulty in getting out of a chair and that she walked slowly with an antalgic gait and used a cane. Dr. Blonsky of the Rehabilitation Institute found that the petitioner's prognosis for returning to work was poor even with redirection and a successful rehabilitation program. Further, he noted that redirection would be difficult due to her limited vocational experience, age, and lack of education.

■ The Commission noted in its decision that the respondent had offered the petitioner employment and that Dr. Marquardt had indicated that the petitioner could return to light work. It nonetheless found that the petitioner was unable to work. The resolution of conflicting medical testimony falls within the purview of the Industrial Commission. (*Johns-Manville*, 78 Ill. 2d at 178, 399 N.E.2d at 610.) We find that the Commission's decision that the petitioner was entitled to TTD benefits for 188 weeks was not against the manifest weight of the evidence.

The respondent next argues that the Commission's decision that

the petitioner was entitled to $7,484.60 in medical expenses was against the manifest weight of the evidence. Specifically, it contends that the bill submitted by the petitioner from the Mayo Clinic, totalling $3,679.30, reflected treatment which was not reasonably required to cure or relieve the effects of her fall. We agree.

■■ Section 8(a) of the Act provides:

"(a) The employer shall provide and pay for all the necessary first aid, medical and surgical services, and all necessary medical, surgical and hospital services thereafter incurred, limited, however, to that which is reasonably required to cure or relieve from the effects of the accidental injury." Ill. Rev. Stat. 1981, ch. 48, par. 138.8(a).

■■ The report prepared by Dr. Evangelos Frigas of the Mayo Clinic indicated that the petitioner consulted with a gynecologist, a gynecologic surgeon, a cardiologist, an ear, nose and throat specialist, and an ophthamologist. We are unable to find that the services provided by these specialists were reasonably related to the petitioner's back injury. Further, we find no support for the circuit court's conclusion that the respondent waived this issue. Therefore, the Commission's award of medical expenses must be vacated and the cause remanded for recalculation of the proper expenses. The recalculated amount should reflect only those services which were required to diagnose, relieve, or cure the effects of the petitioner's injury.

Lastly, the respondent argues that the Commission's decision that the petitioner was permanently partially disabled to the extent of 80% pursuant to section 8(d)(2) of the Act was against the manifest weight of the evidence. It contends that the petitioner's subjective complaints were not supported by objective physical findings and that there was no medical evidence indicating that she was unable to return to work of a light nature. We do not agree.

■■ Since the date of the accident the petitioner had not worked. She had repeatedly sought medical treatment for her injuries, but with only limited improvement. Further, her prognosis for returning to work was poor given her age and her lack of vocational skills. Dr. Barnett's 1985 examination revealed that the petitioner suffered from severe flattening of the L4-L5 disc spaces and spondylolisthesis involving L4. While we note that the medical evidence regarding the degree and severity of her condition was conflicting, it was the Commission's place to resolve these conflicts. (*Johns-Manville*, 78 Ill. 2d at 178, 399 N.E.2d at 610.) Under the facts of this case, we find that the Commission's conclusion that the petitioner was permanently disabled to the extent of 80% was not against the manifest weight of the evidence.

Accordingly, we affirm the circuit court of Cook County's confirmation of the Commission's decision that the petitioner's injuries arose out of and in the course of her employment with the respondent. We further affirm the TTD award of $140 per week for 188 weeks and the finding that the petitioner was permanently disabled to the extent of 80%. We vacate the Commission's award of $7,484.60 in medical expenses and remand the cause for recalculation of the medical expenses.

Affirmed in part; vacated in part and remanded.

McNAMARA, WOODWARD, McCULLOUGH, and LEWIS, JJ., concur.