PEABODY COAL COMPANY, Appellee, v. THE INDUSTRIAL COMMISSION *et al.* (Robert Fleming, Appellant).

Fourth District (Industrial Commission Division)   No. 4—91—0749WC

Opinion filed July 15, 1992.

Sgro & LaMarca, of Springfield (William LaMarca, of counsel), for appellant.

L. Robert Mueller, of Livingstone, Mueller, O'Brien & Davlin, P.C., of Springfield, for appellee.

JUSTICE WOODWARD delivered the opinion of the court:

Claimant, Robert Fleming, filed an application for adjustment of claim pursuant to the Workers' Compensation Act (Act) (Ill. Rev. Stat. 1983, ch. 48, par. 138.1 *et seq.*). In said application, claimant alleged injuries to his neck and arms on July 23, 1983, arising from and in the course of his employment with respondent, Peabody Coal Company. After a hearing held on March 23, 1988, the arbitrator found that claimant was permanently disabled to the extent of 10% of the man as a whole and, further, was entitled to $2,056.84 in medical expenses. The Industrial Commission (Commission) adopted the arbitrator's decision on October 25, 1990. On September 9, 1991, the circuit court set aside the Commission's decision, and claimant filed a timely notice of appeal.

Claimant raises three issues on appeal: (1) whether the Commission's decision regarding causal connection was against the manifest weight of the evidence; (2) whether the Commission erred in finding claimant's medical bills were necessary and reasonable; and (3) whether the Commission erred in finding that claimant was permanently disabled to the extent of 10% of the man as a whole.

At the arbitration hearing, the following evidence was adduced. On July 23, 1983, claimant was employed by respondent as an underground surveyor. He had worked for respondent since 1970. Prior to July 23, 1983, claimant had sustained no injuries to his neck, head or shoulders. On that date, claimant was traveling in an underground tunnel in a trolley-like vehicle powered by electric motor. Claimant was sitting with his back to the vehicle's front end. His head, neck and upper back were turned toward the front of the vehicle. While traveling at a rate of approximately 20 to 25 miles per hour, one of the vehicle's two electric motors dropped out, causing the trolley to come to an abrupt stop. Claimant was thrown forward and out of the seat. The force caused claimant's hard hat to come off. Claimant could not recall whether he hit any part of the tunnel's surface. Initially, he was stunned by the abrupt stop but felt no immediate symptoms. Claimant continued working, but approximately a week after the accident, he began experiencing pain and stiffness in his neck, back, upper torso, numbness in his head and a tingling sensation down both arms. Claimant then immediately sought emergency care at Memorial Medical Center and received muscle relaxants.

Claimant was seen by Dr. Choi on August 3, 1983. He complained of pain and swelling in the back of his neck and left shoulder during work. Dr. Choi diagnosed neck muscle strain, noting tenderness at the left upper trapezius muscles and posterior neck and severely limited neck rotation. He also noted that the claimant had no complaints of pain in his hands and arms. Dr. Choi prescribed pain medication and physical therapy.

Claimant continued seeing Dr. Choi and participated in physical therapy for several weeks. During these visits, he repeatedly complained of headaches and stiffness in his neck. Claimant testified during this time he experienced soreness in his hands and arms and a tingling sensation in same. He began treatment with a TENS unit for his neck muscles and was discharged from Dr. Choi's care on September 19, 1983. In July 1984, claimant returned to Dr. Choi with complaints of pain in the posterior neck region and headaches. At this time, he was also experiencing dizziness during work. Dr. Choi again diagnosed neck muscle strain and prescribed physical therapy.

On October 2, 1984, claimant experienced an episode at work in which both of his arms went numb and the fingers of his left hand tingled. He also experienced dizziness and neck pain which radiated into his left arm. Claimant sought treatment for this condition at the emergency room at St. Vincent's Memorial Hospital, where he was seen by Dr. Asali.

Claimant's symptoms of dizziness, numbness in the back of the head, left arm and left hand and headaches persisted. In November 1984, he was again examined by Dr. Choi. Unable to determine the cause of claimant's symptoms, particularly his dizziness, Dr. Choi referred claimant to Dr. Wesley Betsill. Claimant testified he had suffered no other injury between July 23, 1983, and November 1984. Dr. Betsill diagnosed chronic anxiety with hyperventilation syndrome, tension headache and questionable right ulnar neuropathy. Claimant stated that when asked by Dr. Betsill to induce hyperventilation, his symptoms were completely different than those for which he had been seeking treatment.

Claimant next saw Dr. Gregory Polovich, a chiropractor, in December 1984, complaining of the same symptoms of dizziness and soreness in his neck, arms and back. Dr. Polovich regularly treated claimant until May 1986. During this treatment regimen, claimant's symptoms improved somewhat. When claimant ceased these treatments, his symptoms immediately returned.

On March 14, 1985, Dr. Bala Manyan, a neurologist, examined claimant and made the diagnosis of Fahr's disease, a rare disorder

which involves intracranial calcification. At this examination, claimant complained of headaches, neck pain and dizziness.

In May 1986, claimant sought treatment for his symptoms from Dr. Michael Wilson, who had been treating the claimant for a thyroid condition. At this time, Dr. Wilson noted that claimant had recurrent symptoms of dizziness, headaches and left side numbness and stiffness. Dr. Wilson also noted that claimant had developed a popping in his jaws below his ears. He diagnosed possible temporal mandibular joint dysfunction (hereinafter TMJD). He referred claimant to Dr. William Sturm, a dentist, for further evaluation of the TMJD condition.

In his evidence deposition taken on July 8, 1987, Dr. Sturm testified that he examined claimant on June 1, 1986. At that time, claimant complained of frequent headaches, dizziness, light-headedness, ringing in his ears, numbness in his arms and fingers and soreness and stiffness in his upper back and torso. Claimant also stated that he had difficulty in opening and closing his jaw, pain in both jaw joints, pain in the facial muscles and pain in the lower teeth. He felt easily fatigued at the end of the workday and was experiencing pain in his eyes and visual problems. Dr. Sturm attributed all of these symptoms to TMJD.

Dr. Sturm opined that within a reasonable degree of medical and surgical certainty claimant's TMJD dysfunction was causally related to the accident of July 23, 1983. Dr. Sturm's opinion was based upon the symptoms the claimant was currently exhibiting, as well as the chain of symptoms experienced by claimant after having sustained the whiplash-like injury when the trolley-like vehicle in which he was riding came to a sudden stop. Dr. Sturm further stated that the onset of pain in the neck and shoulders of which claimant had complained since the accident was consistent with TMJD, even though said condition did not necessarily begin immediately after the accident. Dr. Sturm concluded that claimant's symptoms of light-headedness, headaches, neck pain, numbness, tingling of the fingertips and pain in the jaw joints were consistent with TMJD. When asked if there was any time frame in which he would expect the symptoms of clicking and popping in the jaws to be manifest in order to determine whether TMJD was related to an accident, he stated that these symptoms could occur at any time after the trauma and still be caused by that trauma.

Dr. Sturm had claimant wear a therapeutic device known as the Kenner Appliance. Over a period of six months, claimant reported a gradual reduction in most, but not all, of his symptoms. Dr. Sturm testified that without the use of this appliance claimant's condition would continue indefinitely.

Claimant testified that with the use of the Keller Appliance as prescribed by Dr. Sturm, the symptoms directly related to jaw movement were almost completely alleviated. Claimant also stated that he continues to experience symptoms of dizziness and discomfort in the neck and left shoulder areas. Claimant thought these symptoms substantially impaired his functioning at work. He further stated that following the subject injury he had no further injury to his head, neck or back.

Dr. Sturm opined that the extent of claimant's TMJD condition could impede his work capacity. With respect to permanency, Dr. Sturm stated that even after the symptoms of jaw clicking and popping subside with the use of the Keller Appliance, the condition will continue indefinitely.

Claimant was referred to Dr. Edward Trudeau, who examined him on July 31, 1986. Dr. Trudeau found that claimant was tender to palpitation over the dorsal cervical paraspinals and over the thoracic paraspinals bilaterally. Dr. Trudeau opined that claimant may have post-traumatic cervical neck syndrome, as well as having "a strain of the thoracic paraspinal muscles and trapezius muscle strain, also an element of occipital neuralgia bilaterally accounting for neck and occipital head pain." Dr. Trudeau recommended that claimant continue to see Dr. Wilson, given the persistence of post-traumatic cervical syndrome cases.

In July 1987, Dr. M. M. Sternstein reviewed claimant's medical records at respondent's request. In a letter dated July 7, 1987, Dr. Sternstein concluded that claimant's TMJD problems could be related to the July 1983 accident, though he would have expected symptoms of the disorder to appear earlier than they did.

Claimant initially argues that the Commission's decision regarding causal connection was not against the manifest weight of the evidence. He relies primarily on the testimony of Dr. Sturm. Conversely, respondent contends that the record does not support the Commission's decision as to causal connection.

■■ Claimant bears the burden of proving that the injury was causally related to his employment. (*Phillips v. Industrial Comm'n* (1989), 187 Ill. App. 3d 704, 543 N.E.2d 946.) The Commission's findings will not be set aside unless contrary to the manifest weight of the evidence. (*Phillips*, 187 Ill. App. 3d 704, 543 N.E.2d 946.) Moreover, a chain of events which establishes a prior condition of good health, an accident and a subsequent condition of ill-being resulting in disability may be sufficient to prove a causal connection between the accident and the employee's injury. *International Harvester v. Industrial Comm'n* (1982), 93 Ill. 2d 59, 442 N.E.2d 908.

■ The medical records and claimant's testimony established that his symptoms pertaining to his neck, shoulder and head were consistent following the July 1983 injury. Moreover, it was Dr. Sturm's opinion that claimant's TMJD condition was causally related to the subject injury, despite the fact that the jaw-clicking symptoms did not occur until several years later. Dr. Sternstein did not dispute Dr. Sturm's conclusion, and he opined that claimant's jaw problems could be related to the July 1983 injury. This is sufficient evidence to support the Commission's decision regarding causal connection. Moreover, claimant's testimony that prior to and following the subject injury he had not experienced any injuries to his neck, head or shoulder was unrebutted by respondent. Accordingly, we find the circuit court erred in reversing the Commission's finding in regard to this issue.

■ Next, claimant argues that the Commission's decision as to the permanency of claimant's injury was not against the manifest weight of the evidence. It is axiomatic that the Commission's findings regarding the extent and permanency of a claimant's injury will not be disturbed on review unless it is against the manifest weight of the evidence. (*Palmer House v. Industrial Comm'n* (1990), 200 Ill. App. 3d 558, 558 N.E.2d 285.) Dr. Sturm opined that claimant's symptoms resulting from the July 1983 injury would continue indefinitely. Also, claimant testified that his work capacity continued to be adversely affected by said symptoms. Respondent offered no evidence to rebut this testimony. We find that, based on this evidence, the Commission was entitled to find that claimant was permanently disabled to the extent of 10% of the man as a whole.

■ Finally, claimant argues that the Commission's decision regarding the necessity and reasonableness of his medical bills was not against the manifest weight of the evidence. The disputed medical bills regard those services provided by Dr. Polovich, a chiropractor, and Dr. Sturm. Our review of the record demonstrates the necessity and reasonableness of these services, which provided substantial relief of claimant's symptoms. Accordingly, we find that the Commission's decision regarding the necessity and reasonableness of the disputed medical treatment was not against the manifest weight of the evidence.

The judgment of the circuit court is reversed.

Reversed.

McCULLOUGH, P.J., and H. LEWIS, STOUDER, and RAKOWSKI, JJ., concur.